JAMES W. KWON, ESQ.
Nevada Bar No. 8146
JAMES KWON, LLC
6280 Spring Mountain Road, Suite 100
Las Vegas, Nevada 89146
T: (702) 515-1200
F: (702) 515-1201
jkwon@jwklawfirm.com
*Attorneys for Creditors/Shareholders,
Saean, Inc. and Jung Yong Lee*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>EMPIRE POST MEDIA, INC.,<br><br>Debtor. | Case No.: 21-11506-abl<br>Chapter 7<br><br>Hearing Date: July 7, 2021<br>Hearing Time: 9:30 AM |

## MOTION TO DISMISS BANKRUPTCY CASE

Creditors, Saean, Inc. and Jung Yong Lee (hereinafter collectively referred to as "Movants"), by and through James W. Kwon, Esq., of the law firm James Kwon, LLC, file this Motion to Dismiss this Bankruptcy Case for cause pursuant to 11 U.S.C. 707(a) as the Secretary, Ted Campbell (hereinafter "Campbell"), had no authority to file the petition, even if presumably authorized by William Sawyer (President and Director of Debtor) (hereinafter "Sawyer"). In *Empire Post Media, Inc. v. Saean, Inc., et al.*, Eighth Judicial District Court, County of Clark, State of Nevada, Case No. A-20-813165-C (the "State Court Action"), Debtor and its devious officers, including Sawyer and Campbell, have lost every significant request for relief, including their ability to generally conduct business for Empire Post Media, Inc. (hereinafter "EMPM"). This included being denied injunctive relief, sanctions for failure to provide corporate documents, failure to conduct the annual shareholder meeting, Sawyer's self-issued preferential "Class 'A'" stocks being terminated, etc.

Four days before the State Court determined whether EMPM had obtained new representation, which would have resulted in a dismissal of the case, EMPM's former counsel, Byron Thomas, Esq., filed the bankruptcy petition on behalf of EMPM. In a last desperate attempt to antagonize the shareholders and creditors of EMPM, Sawyer and Campbell have now placed the publicly traded corporation into bankruptcy, without authority or notice. The petition should be dismissed for cause as the corporate documents, shareholders or any other interested party with standing or authority, did not provide consent for the petition's filing – nor were the officers of EMPM authorized to do the same.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### JURISDICTION

This matter is brought pursuant to 11 U.S.C. § 707(a). Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. §§ 157 and 1334; and this is a core proceeding within the meaning of 28 U.S.C. § 157 (b) (2) (A) and (G).

### II.
### PROCEDURAL AND FACTUAL BACKGROUND

A.  **EMPM's Bankruptcy Filing is One of Several Actions in a Long Series of Gross Mismanagement, Meant to Thwart the Shareholders, Saean and Jung Yong Lee.**

1. On or about early 2019 Jung Yong Lee ("Chairman Lee") discussed with William Sawyer ("Sawyer"), Ted D. Campbell, II ("Campbell") and John Dolkart, Esq. ("Dolkart"), Saean's purchase of another corporation which would act as a subsidiary to Saean, and further develop its electric vehicle business in America. Chairmen Lee is the owner of numerous patents regarding electric vehicles. Answer and Third-Party Complaint, Exhibit 1, attached to Declaration of James W. Kwon, Esq. ("Kwon Declaration"), filed concurrently herein.

2. Based on the advice received from Sawyer, Campbell and Dolkart, Chairmen Lee

decided and directed Saean, to buy shares in EMPM in an amount which would constitute a super majority or at least 67% of the common stock available.

3. Rather than follow the direction provided by Chairmen Lee, Sawyer, Campbell and Dolkart, on around May 2019 directed that Saean purchase 64.78% of EMPM's shares. Sawyer, Campbell and Dolkart, did not immediately explain to Chairmen Lee why they had purchased less than a super-majority of shares of EMPM; nor did they explain why those shares would cost $350,000 (an astronomical price based on the value of the company and its assets as opposed to other companies which could be purchased in whole and have Saean own 100% of the shares).

4. At this time Sawyer and Campbell were likewise officers, directors and/or shareholders of Saean, and Chairmen Lee was the Chairmen of the Board for Saean. Dolkart acted as corporate counsel for Saean and thereafter EMPM.

5. During the course of dealings with Sawyer, Campbell and Dolkart, it became evident that they had ulterior motives for only purchasing 64.78% of EMPM. Despite frequent request Sawyer, Campbell and Dolkart refused to:

    a. Identify the remaining 35.22% shareholders;

    b. Would not provide an accounting of the funds provided by Saean, or the books and records of EMPM;

    c. Provided corporate documents conducting corporate business which was either in draft form or unsigned;

    d. Continually claimed that any relevant documents had been provided following requests, when no such disclosures had been made;

    e. Sawyer and Dolkart, did not provide any due diligence documents for Empire prior to its purchase for review by Saean, Chairmen Lee or their agents; and

f.  Concealed actions to disburse preferential shares to themselves, without providing notice to any other interested parties, etc.

6. Sawyer, further mismanaged Empire following his appointment as CEO, by failing to have EMPM properly undergo an audit to further the goals of Saean (in part, by not producing documents which were in his control and possession, or which he had reasonable access, regarding both Saean and EMPM), would not provide information with reasonable transparency regarding Empire's operations, fired the lead engineer without cause, was unable to use the leased space because it could not be occupied according to local building code; along, with many other examples of corporate waste or gross mismanagement.

7. Dolkart and Campbell, both at one point practicing attorneys, with an emphasis in regulatory compliance for publicly traded companies, and several years of experience, failed to advise Chairmen Lee of Sawyer's failures as EMPM's CEO; which would reasonably lead to the conclusion that EMPM would soon be insolvent if positive steps were not undertaken to realize the vision of Saean for EMPM.

8. Rather than rectify the ongoing problematic issues, or to advise Saean of the looming likelihood of insolvency, Sawyer, Dolkart and Campbell concealed these issues and further pleaded with Chairmen Lee and Saean to provide further funds, to serve their own interests – and not the other shareholders, including Saean.[1]

9. Additionally, rather than resolve any claimed issues of wrongdoing with Saean, EMPM continues to further waste its resources by filing the foregoing lawsuit against Saean and Chairmen Lee, when EMPM is insolvent or "in a compromised position to pay for the premises

---

[1] During this same time, and sometime previous Tammy Billington, who is or was involved in a personal relationship with Sawyer, assisted Empire, Sawyer, Campbell and Dolkart in their efforts which adversely impacted both Saean and Chairmen Lee.

Page 4 of 15

which it has leased, equipment which it has financed the purchase of, and to structure other necessary business matters." Complaint, ¶25, Exhibit 2, attached to Kwon Declaration.

**B.  EMPM's Failed Complaint Against Saean and its Chairmen, Jung Yong Lee.**

10. After Saean refused to further finance the "unchecked actions" of William Sawyer, Ted Campbell and Tammy Billington, on April 2, 2020 EMPM filed its Complaint against its majority shareholder, Saean, Inc. and the Chairmen of Saean, Inc., Jung Yong Lee. Exhibit 2, attached to Kwon Declaration.

11. No notice of the Complaint was provided to Saean or Chairmen Lee. The Complaint was also filed by Byron Thomas, Esq., the same attorney who has now filed EMPM's bankruptcy petition. Docket No. 1.

12. EMPM claimed that if funding was not received it would "lose certain assets and business opportunities as a result of Defendants' [Saean, Inc. and Jung Yong Lee] conduct." Complaint, ¶ 42.

13. The Complaint nor other filings describe what "assets or business opportunities" would be lost, nor does the Declaration of William Sawyer provide any further details. (To date there has still been no reasonable disclosure of these claimed lost opportunities.)

  1) **EMPM's Application/Motion for a TRO and Injunction Are Denied; Saean's Counter-Motion for Inspection of Books and Records is Granted.**

14. According to the Complaint and the Ex Parte Application for TRO and Motion for Preliminary Injunction, Saean is the 64.78% shareholder of EMPM. Exhibit 2, attached to ("Kwon Declaration") at p. 5:3; Complaint, ¶ 9.

15. At the May 21, 2020 hearing on EMPM's application for a temporary restraining and injunction, EMPM's requests for relief were denied. Saean's counter-motion for inspection of books and records pursuant to NRS 78.257(1) was granted:

IT IS FURTHER ORDERED that pursuant to NRS 78.257(1), Plaintiff shall produce, "the books of account and all financial records of the corporation" which includes any financial records, bank statements, stockholder and share ledgers, native accounting files, contracts, agreements, documents evidencing statements made in public filings with the U.S. Securities and Exchange Commission or other documents which reasonably allows Defendants' to account and document the actions of the Plaintiff's officers and directors in managing Empire Post Media, Inc. ("Empire").

IT IS FURTHER ORDERED that pursuant to NRS 78.257(1), Plaintiff shall produce, "the books of account and all financial records of the corporation" which includes any financial records, bank statements, stockholder and share ledgers, native accounting files, contracts, agreements, documents evidencing statements made in public filings with the U.S. Securities and Exchange Commission or other documents which reasonably allows Defendants' to account and document the actions of the Plaintiff's officers and directors in managing Empire Post Media, Inc. ("Empire").

Notice of Entry of Order dated June 8, 2020, Exhibit 3, pp. 7-8, attached to Kwon Declaration.

16.   EMPM never produced all of the records and documents that were required. From what was provided EMPM's President, William A. Sawyer, had reduced the amounts in the back accounts to approximately $12,868.80 in its operating accounts as of January 31, 2020.[2]

  2) **Saean's Motions to Terminate Issuance of Unlawful Shares Self-Issued By Sawyer and to Conduct the Annual Meeting of Shareholders are Granted.**

17.   On October 5, 2020 Saean filed its Motion to terminate shares issued by Sawyer to himself approximately 30 days before filing the lawsuit against Saean. The Motion also sought to compel Sawyer to conduct the annual meeting of shareholders. Exhibit 4, attached to Kwon Declaration.

---

[2] As of May 6, 2021, EMPM has $60.00 in a single Bank of America Checking Account No. xxxx2440. Docket No. 20-5. In documents disclosed in the State Court Action (*Empire Post Media, Inc. v. Saean, Inc., et al.*, Clark County District Court, State of Nevada, Case No. A-20-813165-C) EMPM disclosed records indicating four total bank accounts at Bank of America, with the other three accounts ending in xxxx2767, xxxx2893 and xxx8374. The Statement of Financial Affairs filed on May 11, 2021 (Docket No. 26) makes no reference of these accounts as being closed. *Id.* at p. 18.

18.     After supplemental briefing of the parties, the Court granted the Motion. As the Court found and ordered:

> 2.     On March 4, 2020 Sawyer caused to be filed with the Nevada Secretary of State a Certificate of Designation pursuant to NRS 78.1955 which created and provided himself with 1,000,000 preferred shares which act as 500,000,000 votes:
>
>> The Company has approved for designation 1,000,000 shares of Series "A" Preferred Stock (Par Value $0.001). The holders of the Series "A" Preferred Stock are entitled to vote on all matters voted on by the Company's common shareholders, including election of officers and directors, on the basis of (1) share of "A" Class Preferred Stock held five hundred (500) shares of Common Stock.
>
> Certificate of Designation, p. 1.
>
> 3.     On or about this same time on March 4, 2020, Empire filed its Form 8-K with the United States Securities and Exchange Commission. The filing confirms that Sawyer gifted himself the 1,000,000 preferred shares and that he could vote on any matter with his 500,000,000 votes:
>
>> On February 28, 2020, the Board of Directors of Empire Post Media, Inc. (the "Company"), pursuant to the Company's articles of incorporation and amendments thereto, section 5.3 of its bylaws, and N.R.S. 78.315, approved by unanimous written consent, the designation of one million (1,000,000) shares of Series "A" Preferred Stock (the "Written Consent"). Additionally, pursuant to this Written Consent the Company approved the issuance of 1,000,000 shares of Series "A" Preferred Stock to William A. Sawyer, a current officer and director of the Company (hereinafter referred to as "Mr. Sawyer")….
>>
>> The holders of the Series "A" Preferred Stock shall have that number of votes (identical in every other respect to the voting rights of the holders of the Common Stock of the Corporation or other potential holders of other series of voting Preferred Shares entitled to vote at any Regular or Special Meeting of the Shareholders) equal to five hundred (500) shares of Common Stock for each one (1) share of Series "A" Preferred Stock held.
>>
>> As such, the Series "A" Preferred Stock will enable Mr. Sawyer to vote up to 500,000,000 shares of Common Stock on any matter with the holders of the Common Stock of the Corporation voting together as one (1) class. The Series "A" Preferred Stock effectively gives Mr. Sawyer majority voting control of the Company's common stock for a period of five (5) years from the date of issuance at which such time the Series "A" Preferred Stock held

by Mr. Sawyer, or his assigns, shall be extinguished and fully cancelled on the books and records of the Corporation.

*Id.*, p. 2, ¶¶ 1, 2 and 4.

4. <u>Defendants or other shareholders of Empire Post Media, Inc., were not provided notice of Sawyer's gifting himself of the 1,000,000 shares, the 500,000,000 votes or that he would have "majority voting control of the Company's common stock for a period of five (5) years from the date of issuance…"</u> …

9. After a close review of the Articles of Incorporation and the Certificate of Designation, it appears Empire failed to comply with the requirements of NRS 78.195 and NRS 78.1955….

14. <u>While the Certificate of Designation was properly filed with the Secretary of State, Plaintiffs presented no evidence that there was shareholder approval authorizing the issuance of the subject share.</u>…

THIS COURT HEREBY ORDERS that the Defendant's Motion to Terminate Unlawful Shares Issued to William Sawyer and to Conduct a Meeting of Shareholders to Elect Board of Directors and Ratify Revised Articles of Incorporation and Bylaws shall be GRANTED.

IT IS FURTHER ORDERED that the Certificate of Designation dated March 4, 2020 is thereby void and of no effect, thereby terminating the prior preferred shares described therein.

IT IS FURTHER ORDERED that notwithstanding the Proxy being valid at the time of filing the Certificate of Designation, that it is nonetheless also void.

Order dated February 24, 2021, Exhibit 4, pp. 3, 4, 6, 7 [Emphasis added], attached to Kwon Declaration.

**3)  Saean's Motion to Prevent Solicitation and Perfection of Further Debt is Granted.**

19. On November 25, 2020 Saean filed its Motion for Order Preventing Plaintiff's Solicitation and Perfection of Further Debt and to Conduct Annual Shareholder Meeting on Order Shortening Time. Exhibit 5, attached to Kwon Declaration.

20. As described in the Motion:

As mentioned by Saean in other filings, Sawyer has been soliciting possible investors offering convertible notes payable after six months at 8-10% and/or

convert to stock of Empire at $.02. This is while Empire had $12,868.80 in its operating accounts as of January 31, 2020. Sawyer has likewise represented that Empire has multiple business plans to bring the corporation into profitability which would result in either a $450,000 or $3 million dollars in profit. As speculated by other parties, it is highly likely that Sawyer will use any funds raised to pay for the ongoing attorney's fees and costs of Empire's baseless lawsuit. Sawyer should not be permitted to further bind Empire to notes, loans and arrangements which Empire cannot repay, at the expense of the shareholders and for his own personal interests. As Sawyer has proven thus far by his ill contrived scheme and failure to manage the affairs of Empire reasonably, an order preventing such further harmful conduct should be entered preventing Sawyer from further harming Empire and the shareholders. Additionally, the annual shareholder meeting, which was supposed to be conducted on May 15, 2020, should be conducted immediately. This will allow for the preservation of Empire best interests and not ingratiating Sawyer's own personal interests.

Motion, Exhibit 5, p. 1:24-2:12.

21. On January 14, 2021 Saean's Motion was granted, in conjunction with its other Motion for Order to Show Cause Why Empire Should Not Be Held in Contempt. Exhibit 6, attached to Kwon Declaration.

### 4) EMPM's Prior Counsel Withdraws, and It Fails to Retain New Counsel.

22. Following EMPM's counsel's withdrawal, the Court issued a Status Check to determine the retention of new counsel. EMPM did not appear. Exhibit 7, attached to Kwon Declaration. The Court thereafter entered an Order to Show Cause which would determine if Plaintiff's Complaint would be dismissed. Exhibit 8, attached to Kwon Declaration.

23. Prior to the May 4, 2021 Order to Show Cause Hearing, Sawyer, Campbell and their former counsel, Byron Thomas, failed to provide any notice to the shareholders, creditors or the United States Security and Exchange Commission ("SEC")[3] of the intended or filed bankruptcy petition.

---

[3] The last filing with the SEC was submitted on May 28, 2020.

24. After having been in bankruptcy for almost a month, the Trustee of EMPM bankruptcy filed a notice of bankruptcy filing with the State Court. Exhibit 9, attached to Kwon Declaration.

**C. EMPM's Bylaws Do Not Authorize the Filing of Bankruptcy, Nor Was Such Anticipated Action Noticed to the Shareholders and Creditors.**

25. Prior to the petition being filed, EMPM provided no notice of its intentions to undertake such action with the shareholders and creditors. Kwon Declaration.

26. The Bylaws of EMPM do not contain a specific provision for seeking insolvency. Exhibit 10, Bylaws of EMPM dated October 15, 2009, attached to Kwon Declaration.

**D. This Court Grants Movants' Motion to Lift the Automatic Stay to Proceed With the State Court Case.**

27. Following the filing of Movant's Motion to Lift the Automatic Stay to proceed with the State Court Action (Docket No. 11), the Court granted the relief requested on May 26, 2021.

28. Shortly after filing this Motion, Movants will be filing with the State Court their Motion to have by meeting or resolution the *nunc pro tuc* removal of the current officers of EMPM and other officers appointed in their stead, a judicial determination that Campbell and Sawyer were not authorized to file EMPM's bankruptcy petition based on the facts of the matter and in accordance with NRS 78, *et seq.*

29. The Motion in State Court will be sought to be heard on an order shortening time, which will likely be heard prior to this matter being heard in ordinary course.

///

///

///

///

# III.
# LEGAL ARGUMENT

A.  **The Petition Must Be Dismissed For "Cause" Since the Bylaws, State Statute and the Facts of This Matter All Demonstrate a Lack of Authority Allowing This Extraordinary and Self-Serving Act.**

Sawyer or Campbell did not have authority to file the bankruptcy petition. "A person filing a voluntary petition for bankruptcy on behalf of a business entity must be duly authorized to do so. *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945). If the person lacks authority, the court has no alternative but to dismiss the petition. Id. State law generally determines who has authority to file a bankruptcy petition. Id. at 106–07, 65 S.Ct. 513." *In re Lake Cty. Grapevine Nursery Operations*, 441 B.R. 653, 654–55 (Bankr. N.D. Cal. 2010). "[S]tate state law—not federal law—governs whether a person is authorized to file a bankruptcy petition on behalf of a corporation." *Sino Clean Energy Inc. by & through Baowen Ren v. Seiden*, 565 B.R. 677, 680 (D. Nev. 2017), *aff'd sub nom. In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018). "[T]he the authority to file a bankruptcy petition must be found in the instruments of the corporation and applicable state law. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155 (Bankr.D.Me.1982)." *Matter of Quarter Moon Livestock Co., Inc.*, 116 B.R. 775, 778 (Bankr. D. Idaho 1990); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) ("A person filing a voluntary bankruptcy petition on a corporation's behalf must be authorized to do so, and the authorization must derive from state law."). "If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition." *Id. citing Price*, 324 U.S. at 106, 65 S.Ct. 513; *Tenneco West, Inc. v. Marathon Oil Co.*, 756 F.2d 769, 771 (9th Cir. 1985); *In re Licores*, No. SA 13-10578-MW, 2013 WL 6834609, at *5 (C.D. Cal. Dec. 20, 2013).

1.  **Neither the Bylaws nor Nevada Statute Authorized the Filing of the Petition.**

The Bylaws generally allow the director and president of EMPM to conduct business but not place the corporation into insolvency which would prejudice the shareholders and creditors. Nevada statute holds that EMPM's officers cannot undertake action to directly undermine a change in corporate management. NRS 78.139 states:

> **NRS 78.139 Directors and officers: Duties, presumptions and powers when confronted with change or potential change in control of corporation.**
>
> 1. If directors or officers take action to resist a change or potential change in control of a corporation, which action impedes the exercise of the right of stockholders to vote for or remove directors:
>     (a) The directors must have reasonable grounds to believe that a threat to corporate policy and effectiveness exists; and
>     (b) The action taken which impedes the exercise of the stockholders' rights must be reasonable in relation to that threat.
> - If those facts are found, the directors and officers have the benefit of the presumption established by subsection 3 of NRS 78.138.
>
> 2. <u>**The provisions of subsection 1 do not apply to:**</u>
>     (a) Actions that only affect the time of the exercise of stockholders' voting rights; or
>     <u>**(b) The adoption or signing of plans, arrangements or instruments that deny rights, privileges, power or authority to a holder of a specified number or fraction of shares or fraction of voting power.**</u>
>
> 3. <u>**The provisions of subsections 1 and 2 do not permit directors or officers to abrogate any right conferred by the laws of this State or the articles of incorporation.**</u>
>
> 4. Without limiting the provisions of NRS 78.138, a director may resist a change or potential change in control of the corporation if the board of directors determines that the change or potential change is opposed to or not in the best interest of the corporation upon consideration of any relevant facts, circumstances, contingencies or constituencies pursuant to subsection 4 of NRS 78.138, including, without limitation, the amount or nature of the indebtedness and other obligations to which the corporation or any successor to the property of either may become subject, in connection with the change or potential change, provides reasonable grounds to believe that, within a reasonable time:
>     (a) The assets of the corporation or any successor would be or become less than its liabilities;
>     (b) The corporation or any successor would be or become insolvent; or

(c) Any voluntary or involuntary proceeding concerning the corporation or any successor would be commenced by any person pursuant to the federal bankruptcy laws.

*Id.* [Emphasis added].

EMPM and is officers, by first filing a Certificate of Designation claiming 500,000,000 votes, then filing the State Court Complaint and now this petition (following several adverse rulings in State Court) – are all actions to unlawfully resist a change in control. EMPM through Sawyer has failed to comply with numerous provisions of the Articles, Bylaws and Nevada statutes as agreed upon by Judge Williams. The filing of this unauthorized petition is simply the latest in a series of unauthorized actions by Sawyer and Campbell.

      **a.    Sawyer as the Sole Officer Had No Approval to Retain Bankruptcy Counsel or Authorize Campbell to Sign the Petition to Serve His Own Interests to the Detriment of the Shareholders and Creditors.**

Sawyer has been judicially divested of his self-issued stocks and voting power, the ability to raise funds and have EMPM incur debt it cannot repay, ordered to conduct the annual meeting of shareholders and ordered to provide corporate business and financial information, which orders have been refused. NRS 78.140 states in pertinent part:

> **NRS 78.140 Restrictions on transactions involving interested directors or officers; compensation of directors.**
> ...
> 2. The circumstances in which a contract or other transaction is not void or voidable pursuant to subsection 1 are:
>    (a) The fact of the common directorship, office or financial interest is known to the board of directors or committee, and the directors or members of the committee, other than any common or interested directors or members of the committee, <u>**approve or ratify the contract or transaction in good faith.**</u>
>    (b) The fact of the common directorship, office or financial interest is known to the stockholders, and <u>**stockholders holding a majority of the voting power approve or ratify the contract[4] or transaction in good faith.**</u> The

---

[4] "The execution of the contract by the corporation implies full knowledge on its part." *Hough v. Reserve Gold Mining Co.*, 55 Nev. 375, 35 P.2d 742, 745 (1934).

votes of the common or interested directors or officers must be counted in any such vote of stockholders.

(c) The fact of the common directorship, office or financial interest is not known to the director or officer at the time the transaction is brought before the board of directors of the corporation for action.

**(d) The contract or transaction is fair as to the corporation at the time it is authorized or approved.**

*Id.* [Emphasis added].

"A corporate officer or director stands as a fiduciary to the corporation. This fiduciary relationship requires a duty of good faith, honesty and full disclosure. *Western Indus., Inc. v. General Ins. Co.*, 91 Nev. 222, 228, 533 P.2d 473, 476 (1975)." *Leavitt v. Leisure Sports Incorporation*, 103 Nev. 81, 86, 734 P.2d 1221, 1224 (1987). "The fiduciary duties of directors and officers are to exercise their respective powers in good faith and with a view to the interests of the corporation." NRS 78.138(1). "[A] corporate officer or director may contract directly with the corporation. Such contracts are valid, if at the time of their making, they are fair to the corporation. *See* NRS 78.140; *Pederson v. Owen*, 92 Nev. 648, 650, 556 P.2d 542, 543 (1976)." *Leavitt*, 103 Nev. at 86.

EMPM through Sawyer, or its officers are not permitted to continue to avoid his fiduciary duties by retaining bankruptcy counsel and "plunging" the corporation into insolvency, which has only been precipitated by his gross mismanagement. These actions just like the several actions taken by Sawyer prior to the petition being filed, have not been taken in "good faith."

2. **The State Court Will Also Likely Opine That Sawyer and Campbell Were Not Authorized to File this Bankruptcy Petition, Just As the State Court Found That Sawyer Has Failed to Comply With Other Court Orders and NRS 78,** *et seq.*

The State Court's orders and rulings have been, without exception, in contravention of EMPM's acts both before and after the filing of the State Court complaint. There is no reason that this trend is likely to be reversed given the increasing severity of recklessness and harm induced by EMPM's current officers. Based on the reasons described herein, this Motion should be granted.

When the State Court provides its ruling and/or order(s), Movants will provide the same for the Court's consideration.

## IV.
## CONCLUSION

WHEREFORE, it is respectfully requested that this Court dismiss the petition filed in this matter because it was filed without authority, in contravention of EMPM's Bylaws and Nevada law and statutes – which will be likely be the same conclusion that will be reached by Judge Williams in the State Court Action.

Dated this __2__ of June 2021.

JAMES KWON, LLC

_____
JAMES W. KWON, ESQ.
Nevada Bar No. 8146
6280 Spring Mountain Road, Suite 100
Las Vegas, Nevada 89146
*Attorneys for Creditors/Shareholders,*
*Saean, Inc. and Jung Yong Lee*

NVB 4001 (Rev. 09/20)

## * * § 362 INFORMATION SHEET * *

| | | |
|---|---|---|
| Empire Post Media, Inc. | 21-11506-abl | |
| **DEBTOR** | BK- | **MOTION #:** |
| Saean, Inc. & Jung Yong Lee | CHAPTER: 7 | |
| **MOVANT** | | |

**Certification of Attempt to Resolve the Matter Without Court Action:**
Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.
Date: 6/2/2021          Signature: _____
                                          Attorney for Movant

Note for parties not represented by an attorney: Information about motions for relief from the automatic stay is available at the U.S. Bankruptcy Court's website:
https://www.nvb.uscourts.gov/filing/filing-pro-se/legal-services/.

PROPERTY INVOLVED IN THIS MOTION: N/A
NOTICE SERVED ON: Debtor(s) ✔ ; Debtor's counsel ✔ ; Trustee ✔ ;
DATE OF SERVICE: 6/2/2021

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _____ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S): | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note: _____ | . |
| Interest Rate: _____ | . |
| Duration: _____ | . |
| Payment per Month: _____ | . |
| Date of Default: _____ | . |
| Amount in Arrears: _____ | . |
| Date of Notice of Default: _____ | . |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: _____ | SUBMITTED BY: _____ |
| | SIGNATURE: _____ |